UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHAU PAPATHEODOROU, | ) | Case No.: 1:08 CV 2383 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| ROGER CLARK, *et al.*, | ) | |
| | ) | |
| Defendants | ) | ORDER |

Plaintiff Papatheodorou ("Plaintiff") brings the instant action against Defendants Roger Clark ("Clark"), CRM Investors Corporation ("CRM"), Fortress Group USA, LLC ("Fortress"), and National City Bank ("NCB"). Pending before the court is the Motion of NCB for Summary Judgment and Sanctions (ECF No. 96) on its cross-claims for indemnification against Defendants Fortress and Clark.

## I. FACTS AND PROCEDURAL HISTORY

This action arises out of a lawsuit involving an alleged fraudulent investment scheme, wherein Plaintiff claims that Clark, acting as an agent for CRM and Fortress, put $1,000,000 of Plaintiff's money in an escrow account at NCB to be invested by an independent New York trader. After receiving some profits from her investments, the profits stopped being deposited in Plaintiff's account. Plaintiff tried to withdraw her funds from the escrow account, and when she could not, she filed this action. On April 9, 2008, Plaintiff filed the instant action against Clark, CRM, Fortress, and NCB in the United States District Court for the Northern District of California. (Compl., ECF No. 1.) That court granted NCB's Motion to Transfer to the Northern District of Ohio (ECF No. 20),

on September 12, 2008. (Order, ECF No. 37.) On November 10, 2008, NCB filed a cross-claim against Defendant Fortress for indemnification. (Def. NCB's Answer and Affirmative Defenses to Compl. and Cross-cl. against Fortress, ECF No. 49.) On April 14, 2009, NCB amended its cross-claim to include a cross-claim against Clark for indemnification. (Def. NCB's Answer and Affirmative Defenses to Compl. and Am. Cross-cl. against Fortress and Clark, ECF No. 67.) On September 30, 2009, the court granted in part and denied in part NCB's Motion for Partial Judgment on the Pleadings, thereby dismissing several of Plaintiff's claims against NCB. (Order, ECF No. 80.) Plaintiff's current pending claims against NCB are for breach of written contract and conversion.

On July 14, 2009, NCB attorney Jeffrey Saks ("Saks") contacted Clark's attorney, David Aggers ("Aggers"), to determine if he would make Clark available in August for a deposition. (Saks Aff. ¶ 1, ECF No. 96-8; Saks Aff., Ex. 1, p. 10.) Aggers advised Saks that he would not be available from August 5, 2009 through at least August 15th and asked to be accommodated. (Saks Aff., Ex. 1, p. 10.) Saks scheduled the deposition of Clark and a representative of Fortress for August 19 and 20, 2009, and Clark and his attorney were properly served with notice on July 16, 2009. (Saks Aff., Ex. 2, pp. 16-20.) Later that day, Aggers asked that the deposition be rescheduled because of professional obligations. (Saks Aff., Ex. 3, p. 25.) Saks then proposed that the depositions for Clark and a Fortress representative be done on September 1 and 2, 2009. (*Id*., at pp. 24-25.) The next day, Aggers informed Saks that he was experiencing scheduling conflicts and would let him know when he and his client would be available. (*Id*., at p. 24.) On July 22, 2009, Aggers told Saks that he and Clark would be attending the depositions on September 1 and 2, 2009. (Saks Aff., Ex. 5, p. 31.) In addition to the email correspondence, Saks served a Notice of Deposition by electronic mail and U.S. Mail to Plaintiff's counsel and Aggers on July 23, 2009, stating that Papatheodorou would be

deposed on August 31, 2009, Clark would be deposed on September 1, 2009, and corporate designee(s) of Fortress Group would be deposed on September 2, 2009. (Saks Aff., Ex. 6, pp. 38-42.)

On August 28, 2009, Aggers e-mailed Saks and stated that he had spoken with Clark and that Clark would not be attending his deposition due to medical tests related to his heart that were scheduled for September 1st, and that he would possibly have surgery on September 2nd. (Saks Aff., Ex. 7, p. 49.) Aggers then asked Saks to reschedule the deposition. (*Id.*) Paula Wilson ("Wilson"), co-counsel for NCB, told Aggers that NCB would consider rescheduling if it received verification of Clark's excuse from his doctor. (Saks Aff. ¶ 12; Saks Aff., Ex. 7, p. 48.) On August 28th, Aggers e-mailed Wilson the text of an e-mail from Clark, in which Clark stated that he needed to postpone the depositions due to his medical problems. (Saks Aff., Ex. 7, p. 46.) On August 31st, Saks e-mailed Aggers and asked if Clark would show up for his deposition on September 1st. (Saks Aff., Ex. 8, p. 52.) Later that day, Aggers confirmed to Saks that Clark would not be appearing for the September 1st and 2nd depositions, as had already been stated. (Saks Aff., Ex. 9, p. 55.)

On October 8, 2009, Saks called Aggers to find out what was going on with Clark and when he would be available for a deposition. (Saks. Aff. ¶ 17.) Aggers stated that he had not been able to get in touch with Clark and his e-mails to Clark had been bouncing back. (*Id.*) Aggers said he would keep trying to reach Clark and would get back to Saks, but he never did. (*Id.*) On November 6, 2009, Wilson e-mailed Aggers proposing two dates for depositions shortly before the November 16th discovery deadline because Saks had told her that Aggers still had not given him any possible dates. Later that day, Aggers informed both Saks and Wilson that Clark did not have any way to get to Cleveland because the FBI had seized his assets. (Saks Aff. ¶ 19; Saks Aff., Ex. 10, pp. 63-64.) On

November 9, 2009, Aggers e-mailed Wilson that Clark would most likely not answer any questions related to the suit if he showed up to his deposition because he would assert his Fifth Amendment rights against self-incrimination. (Saks Aff., Ex. 11, p. 68.) This was because Clark had concerns growing out of a recent visit by the FBI. (*Id*.) Aggers also told Wilson that he was under the impression that Saks agreed with him that a deposition of Clark would be a waste of time. (*Id*.) Since then, NCB states that neither Clark nor a representative from Fortress has made himself available to be deposed. (Saks Aff. ¶ 21.)

On April 30, 2010, NCB filed a Motion for Summary Judgment and Sanctions (ECF No. 96) against Fortress and Clark, alleging that Fortress and Clark are liable to it for indemnification and in the alternative, sanctions should be granted against Clark for willfully avoiding the taking of his deposition. On June 15, 2010, the court stayed all claims for and against Plaintiff pursuant to 11 U.S.C. § 362(a), after it learned that Plaintiff filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Northern District of California. (Order, ECF No. 103.) However, the court did not stay NCB's cross-claims against Fortress and Clark. (*Id*.) Plaintiff's counsel has since requested permission from the bankruptcy court to allow Plaintiff to proceed in this action.

## II.  LEGAL STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. ...

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists.

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  Thus, in most cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict."  *Id*. at 252.  However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment."  *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*.

If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992).  The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts.  *Id*.  Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford*

*& Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e).

Even where a summary judgment motion is uncontested, as in this case, a court is not permitted to merely enter judgment in the moving party's favor. *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) ("[A] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded.")  Instead, the court may grant summary judgment only if after a close examination of the Motion and the documents in support, the court determines that no genuine issue of material fact remains. *Id.*; *Turner v. FMC*, 23 F. App'x 415, 417 (6th Cir. 2001).

### III.  LAW AND ANALYSIS

#### A.  NCB's Indemnification Claim Against Fortress

NCB alleges that Defendant Fortress is required to indemnify it against the lawsuit initiated by Plaintiff. This is based on the express terms of the indemnification provision in the August 2007 Escrow Agreement (Escrow Agr., ECF No. 96-3), which representatives from both NCB and Fortress signed. Indemnification agreements are generally enforced in Ohio unless enforcing them would be against public policy. *Glaspell v. Ohio Edison Co.*, 505 N.E.2d 264, 266 (Ohio 1987). Courts interpret indemnity agreements the same way they interpret contracts. *Heffner Investments, LTD. v. Piper*, Nos. 10-07-09, 10-07-10, 2008 Ohio App. LEXIS 2112, at *27 (Ohio Ct. App. May

-6-

27, 2008). According to *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003), "[w]hen the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties."

NCB argues that the indemnification agreement is clear and unambiguous. This argument is well-taken by the court. Section 7 of the Escrow Agreement says:

> Fortress agrees to defend, indemnify and hold harmless Escrow Agent from, against and in respect to; i) any and all liabilities, losses, damages, deficiencies or expenses resulting from any action taken in good faith by Escrow Agent and; ii) any and all actions, suits, proceedings, claims, demands, assessments, judgments, costs and expenses (including the reasonable fees and expenses of legal counsel) related to any of the foregoing, except to the extent that any of the foregoing are incurred by Escrow Agent as a result of its own willful misconduct or gross negligence.

(Escrow Agr., p. 2.)

Plaintiff's first count against NCB is for breach of written contract for refusing to release her money and for failing to investigate the suspicious terms of the Escrow Agreement. Her second count is for conversion. Fortress is required to indemnify NCB for all actions related to the Escrow Agreement. The first and second counts are encompassed by the indemnification provision in the Escrow Agreement, as the breach of contract and conversion claims are related to the Escrow Agreement.

The two exceptions to indemnity in this agreement are that Fortress will not indemnify NCB for NCB's own gross negligence or willful misconduct. (*Id.*, at p. 2.) Fortress admitted that it had no evidence that NCB failed to act in good faith, with willful misconduct, or with gross negligence, in its Responses to NCB's Second Set of Requests For Admission.  (Def. Fortress's Answers to Def. NCB's Requests for Admission (Second Set), ECF No. 96-5, at p. 5.) Therefore, there is no genuine

issue of fact as to whether either exception to indemnification is present. Consequently, NCB must indemnify NCB for the claims Plaintiff brought against it. Summary judgment is hereby granted in favor of NCB and against Defendant Fortress.

### B.  NCB's Indemnification Claim Against Clark

NCB further argues that Clark should be individually responsible for indemnifying it in this action. In other words, NCB seeks to pierce the corporate veil, arguing that Fortress is Clark's alter ego. Clark is the manager and sole member of Fortress. (Joint Answers, ECF No. No. 70, ¶¶ 42-43; Clark's Request for Admission Responses, ECF No. 96-6, Nos. 9-11.) Courts will permit individual shareholder liability only if the shareholder is indistinguishable from or the "alter ego" of the corporation itself. *Belvedere Condominium Unit Owners' Ass'n v. R.E. Roark Cos.*, 617 N.E.2d 1075, 1085 (Ohio 1993). NCB cites the test set forth in *Belvedere*, to determine whether a corporate veil can be pierced. A court must find that,

> (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Belvedere*, 617 N.E.2d at 1086. The Ohio Supreme Court determined that this test "strikes the correct balance between the principle of limited shareholder liability and the reality that the corporate fiction is sometimes used by shareholders to protect themselves from liability for their own misdeeds." *Id*. The Ohio Supreme Court modified prong two of the test in *Dombroski v. Wellpoint, Inc*., 895 N.E.2d 538, 540 (Ohio 2008), to state that "a plaintiff must demonstrate that

the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act."

Under prong one, the court finds that NCB can show that Clark's control of Fortress was so complete that the corporation has no separation from Clark. He is and always has been the sole member of Fortress. (Def. Clark's and Def. Fortress's Joint Answers, ECF No. 70, ¶¶ 42-43; Def. Clark's Responses to Def. NCB's First Set of Requests for Admission, ECF No. 96-6, at p. 4.) Furthermore, Clark was the only person authorized as a signatory of the Fortress Escrow Account. (*Id.*, at pp. 4-5.) Similarly, Clark was the only person authorized to direct withdrawals and transfers from the Fortress Escrow Account. (*Id.*, at p. 5; Def. Clark's and Def. Fortress's Joint Answers, ¶¶ 58-60.) Clark even admits that, in his official capacity, he exercised sole and complete control in regard to Fortress' dealings with Plaintiff and with NCB. (Def. Clark's and Def. Fortress's Joint Answers, ¶¶ 44, 48, 56.)

Clark's relationship with Fortress meets the second prong of the test because Clark used Fortress as a vehicle to perpetrate a fraud against National City. Clark admits that once he had engaged the services of NCB, he sent different versions of the Escrow Agreement attachments to NCB and to Plaintiff. (Def. Clark's Responses to Def. NCB's First Set of Requests for Admission, ECF No. 96-6, at pp. 5-6; Def. Fortress's Responses to Def. NCB's First Set of Requests for Admission, ECF No. 96-2, at p. 3; Def. Clark's and Def. Fortress's Joint Answers, ¶ 14.) Clark admits that he intended for NCB to comply with his instructions for withdrawals and transfers of funds from the Fortress Escrow Account. (Def. Clark's Responses to Def. NCB's First Set of Requests for Admission, ECF No. 96-6, at p. 8.)

Finally, NCB meets prong three of the test because it has been injured by having to defend itself in a lawsuit that arises out of Clark's false representations. (*E.g.*, Pl.'s Dep., ECF No. 96-10, at pp. 205-06 (Clark represented that Plaintiff's money would stay in escrow until replaced by an equivalent sum in Treasury bills).) Therefore, the court hereby concludes that Clark can be held individually responsible for indemnifying NCB from Plaintiff's claims. Summary judgment is hereby granted in favor of NCB and against Defendant Clark.

## IV.  CONCLUSION

For the foregoing reasons, the court grants NCB's Motion for Summary Judgment and Sanctions (ECF No. 96). Summary judgment is hereby granted in favor of NCB and against Defendants Clark and Fortress.

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

March 18, 2011

-10-